JOYCE ANN KEENZEL NEWNUM *v.*
BOBBY GLENN KEENZEL

5-6214                                        492 S.W. 2d 408

Opinion delivered April 9, 1973

*Baker & Pittman,* for appellant.

*Herndon & Barton,* P.A., for appellee.

CONLEY BYRD, Justice. The Chancellor awarded temporary custody of Dorothy Virginia Keenzel, age seven, to her father, appellee Bobby Glenn Keenzel. For reversal appellant Joyce Ann Keenzel Newnum contends that the temporary award is contrary to a preponderance of the evidence and that the trial court erred in propounding questions to the witnesses.

The record shows that on September 27, 1971, appellant obtained an uncontested divorce wherein she was awarded custody of Dorothy Virginia Keenzel and the appellee was directed to pay $20 per week child support. It appears that appellee was involved in an industrial

accident the next day and did not go back to work until August 9, 1972. Following the divorce, both parties have remarried. Appellee's wife appeared and testified at the hearing from which this appeal was taken but appellant had obtained an annulment from her husband, a convicted bigamist serving time in the State Prison at Cummins.

Following the divorce and prior to the proceeding before us, the record shows that on May 22, 1972, appellant filed a petition to have appellee held in contempt of court for failure to pay child support and for unlawfully removing the child from her home at Batesville, Arkansas. In response to the citation for contempt for failure to pay, appellee set up his industrial accident and subsequent hospitalization as a defense. To the citation for removal of the child from Batesville, appellee pleaded that since he had not been permitted to visit with the child since January 1972, the appellant subject to the approval of her husband, Gilbert Newnum, had consented for him to take the child on Friday, May 19th, before the citation was issued on Monday, May 22nd. At a hearing held on that citation, the chancellor found that appellee was not in contempt of court but awarded appellee visitation rights to run from June 24 to Monday July 17, 1972 and from August 21, 1972 until the weekend preceding Labor Day.

The present controversy came before the trial court upon appellant's petition for writ of habeas corpus filed on September 12, 1972, alleging that appellee came to appellant's home in West Helena on or about September 1, 1972 and, on the pretext of taking the child out for a hamburger, took the child from appellant and returned to Pulaski County and that he now refuses to surrender the child to appellant.

The proof on the part of appellee was that because of financial difficulties he was forced to move on August 6, 1972, from his former home to another place and that on that date he notified appellant of his new address as he had been instructed to do by the chancellor. On August 21st, he went to Batesville to pick up his child for the designated visitation period but upon arrival he

found that appellant had moved. He did not find the whereabouts of his child until sometime after 10:00 p.m. on August 25th, when Howard Langwell, appellant's father, phoned appellee's home. Appellee and his wife went to West Helena on August 26th, arriving about 10:00 a.m. to pick up the child, but found that neither appellant, the child nor Mr. Langwell was at home. At about 8:15 p.m. Mr. Langwell, his girl friend, appellant and the child arrived at Mr. Langwell's home. There is a dispute between the parties as to what happened thereafter, but it is fair to say that under the pretext of going to get a coke, the child left Mr. Langwell's home with appellee and his wife. Immediately upon arriving home, appellee notified appellant by phone that he had the child at his home in Pulaski County.

Appellant's proof showed that following the last citation for contempt hearing, she had caused her marriage to Mr. Newnum to be annulled. Her father visited her on August 5th and persuaded her to move to West Helena with him which she did on August 19th. Both she and her father testified that she notified appellee by a letter mailed on August 5th, that she was moving to West Helena. Both she and her father testified that the child had her clothes packed and ready to go visit with appellee on August 21st, but he did not come after her. The testimony developed that Mr. Newnum was getting out of prison the week following the trial and that he was going to live with Mr. Langwell and that Mr. Langwell had arranged with his employer to give Mr. Newnum a job. On August 26th appellant, the child, Mr. Langwell and his girl friend had been to Cummins' Prison Farm to see a rodeo in which Mr. Newnum had participated.

From questions asked by the court about the alleged notice that appellant had mailed to appellee on August 5th, appellant admitted that appellee had never been to her father's home in West Helena and that she did not know her father's address. Appellee testified that he did not receive the notice.

Appellant admitted that the child had failed the second grade because she had moved around with Mr.

Newnum some four times during the school year. She also admitted that she had not notified the Master in Chancery of her change in address so that she could receive the child support payments that had been made.

On the whole record, we cannot say that the chancellor abused his discretion in awarding temporary custody to the father. Nor can we say that the chancellor abused his discretion in asking questions. See *Ratton* v. *Busby*, 230 Ark. 667, 326 S.W. 2d 889 (1959), and *Marshall* v. *Marshall*, 55 App. D.C. 173, 3 F. 2d 344, 40 A.L.R. 624 (1925). In the last mentioned case, it is pointed out that in domestic relation cases, a trial judge, who sits as a fact finder, has a wide range of discretion in asking questions of a witness.

Affirmed.